UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:16-cv-00264-MOC-DLH

| | | |
|---|---|---|
| **CHRISTOPHER R. SMITH,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| Vs. | ) | **ORDER** |
| | ) | |
| **MICHELLE TOLER SMITH,** | ) | |
| | ) | |
| Respondent. | ) | |

**THIS MATTER** is before the court on Petitioner's "Verified Petition for Return of Child to France and Issuance of Show Cause Order" (#1) and "Request for Expedited Consideration of Petition for Return of Child to France and Issuance of Show Cause Order" (#2). The court has expedited consideration of these matters.

### FINDINGS AND CONCLUSIONS

Petitioner initiated this action by filing his "Verified Petition for Return of Child to France and Issuance of Show Cause Order" (hereinafter "Hague Petition") (#1) and "Request for Expedited Consideration of Petition for Return of Child to France and Issuance of Show Cause Order" (#2) on August 2, 2016. For cause, Petitioner (or "the Father") alleges that Respondent (or "the Mother"), has wrongfully retained the parties' son "C.R.S.", born in the United States in 2004, from the proper custody and habitual residence jurisdiction of France, and that such wrongful retention occurred on or about June 30, 2016. Petitioner has further alleges as follows. The family resided in North Carolina for several years after C.R.S. was born, but moved to France in July 2012 for Petitioner's employment. He and Respondent began experiencing marital

difficulties in February 2016 and Respondent prevented him from returning to their shared home in France in May 2016. Petitioner and Respondent agreed that Respondent would accompany C.R.S. to Lake Toxaway, North Carolina during the child's summer vacation, as Respondent owns a shared property interest there and the family often visits such location during the summer months. The mother and son purchased round-trip tickets from France to North Carolina, departing June 28, 2016 and returning August 24, 2016; they left on the scheduled departure date. The child is attending sleepaway camp in the United States, where he has been since July 2nd, 2016 and where he is scheduled to remain until August 3rd. The parties agreed that when the Mother and child departed France for the annual summer vacation in North Carolina, the Father would return to the family home in France. The Father therefore returned to the family home in France on or about June 28, 2016. The parties agreed that at the end of the summer vacation in North Carolina, the Mother and child would return to the family home in France and the child would resume school in France. C.R.S. is enrolled at an independent bilingual school in Paris, and is scheduled to return to classes there on September 2, 2016 for the upcoming school year.

Petitioner has further alleged that on July 19, 2016, while at work, he was unexpectedly served with Respondent's North Carolina Complaint for Divorce and Custody, filed in the General Court of Justice for the State of North Carolina, Mecklenburg County. In that Complaint Respondent asserts that North Carolina is the child's permanent residence and requests that the court grant her sole custody, which Petitioner reads as Respondent's unequivocal intent to remain in North Carolina with the child, rather than returning the child to his home in France on August 24, 2016 as previously agreed between the parties. Petitioner states that the divorce and

custody proceedings were unexpected, that he has not agreed to Respondent's unilateral retention of the child in the United States, and that Respondent's retention of the child is wrongful.

Petitioner states that he submitted a Hague Convention Return Application to the French Central Authority, which is being transmitted to the United States Department of State Office of Child's Issues, and that he has filed this Petition for Return of Child to his habitual residence of France in light of the approaching school year. By the Verified Petition, Petitioner seeks, <u>inter alia</u>, an Order directing the return of the child to France, a Show Cause Order prohibiting the removal of the child from the jurisdiction of the court and the taking into safe-keeping the child's passports and travel documents, and a Show Cause Order commanding Respondent to appear with the child in court and show cause why the child should not be returned to France.

## I. Issuance of a Temporary Restraining Order

The court has considered Petitioner's request for a "show cause" Order prohibiting the removal of the child from the jurisdiction of the court and the taking into safe-keeping the child's passports and travel documents and finds that the alternative measure of issuance of a Temporary Restraining Order (hereinafter "TRO") prohibiting Respondent from removing the child from this district pending disposition of the petition more appropriate. The court finds this to be the better course in this particular case. Issuance of a TRO is procedurally governed by Rule 65(b), Federal Rules of Civil Procedure, which provides as follows:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A)  specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B)  the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed.R.Civ.P. 65(b). In considering the issuance of TRO, the court has also considered current case law governing the issuance of such relief:

> Prior to the Winter [Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008)] decision, in the Fourth Circuit, preliminary injunctions and temporary restraining orders were governed by the standard articulated in Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir.1977). In Real Truth About Obama, Inc. v. Federal Election Com'n, 575 F.3d 342 (4th Cir. August 5, 2009), the Fourth Circuit concluded that the Blackwelder test stood in "fatal tension with the Supreme Court's 2008 decision in Winter." Id. at 346. In keeping with Winter, the Fourth Circuit found that first, a plaintiff must now show that he will "likely succeed on the merits" regardless of whether the balance of hardships weighs in his favor. Id. at 346. Also, the likelihood of success on the merits requires more than simply showing that "grave or serious questions are presented." Id. at 347. Second, the plaintiff must make a clear showing that he will likely be irreparably harmed absent preliminary relief. Id. That the plaintiff's harm might simply outweigh the defendant's harm is no longer sufficient. Id. The showing of irreparable injury is mandatory even if the plaintiff has already demonstrated a strong showing on the probability of success on the merits. Id. Third, the Court is admonished to give "particular regard" to the "public consequences" of any relief granted. Id. Finally, there no longer exists any flexible interplay between the factors, because all four elements of the test must be satisfied. Id.

White v. Miller, 2011 WL 1168045, 2 (D.S.C. Mar. 7, 2011).[1] Reviewing the instant petition based on such factors, the court concludes as follows: first, Petitioner has shown a likelihood of success on the merits; second, Petitioner has made a showing of irreparable harm; third, the balance of hardships tips in Petitioner's favor as an equitable basis for granting such relief exists under the Hague Convention; and fourth, a TRO is in the public interest because the relief sought would eventually provide for the orderly and lawful determination of child custody. In

---

[1] The court notes that Real Truth About Obama, Inc. v. Federal Election Com'n, 575 F.3d 342 (4th Cir. 2009), was vacated by the Supreme Court in Real Truth About Obama, Inc. v. Federal Election Com'n, ___ U.S. ___,130 S.Ct. 237 (April 26, 2010) for further consideration in light of Citizens United v. Federal Election Comm'n, 558 U.S___, 130 S.Ct. 876 (2010), which dealt with First Amendment issues and not the standard for considering injunctive relief.

this case, the immediate and irreparable harm absent entry of a TRO is removal of Petitioner and Respondent's child from the district, which would frustrate resolution of the Hague Petition. Further, the court believes a TRO will be an effective means of ensuring that Respondent remains in this district until the Hague Petition is resolved.

A TRO will issue prohibiting Respondent or anyone acting on her behalf from leaving this district with the child pending disposition of the instant Hague Petition.

**II.     Hearing**

In light of the contentions contained in the Hague Petition, the court determines that it is necessary to hold a hearing to resolve Petitioner's claims. At the hearing, the court will determine whether Respondent's retention of C.R.S. in the United States is wrongful, as alleged by Petitioner.[1] The court will also give Respondent an opportunity to address the question of whether she can establish one of the available defenses under the Hague Convention.[2] Counsel

---

1 Regarding wrongful retention, the Fourth Circuit has explained:

> Under the Hague Convention, to secure the return of an abducted child, a petitioner must prove by a preponderance of the evidence that "the child has been wrongfully removed" within the meaning of the Convention. 42 U.S.C. § 11603(e)(1). A petitioner can establish that the removal of a child is "wrongful" where: (1) the child was "habitually resident" in the petitioner's country of residence at the time of removal, (2) the removal was in breach of the petitioner's custody rights under the law of his home state, and (3) the petitioner had been exercising those rights at the time of removal.

Bader v. Kramer, 484 F.3d 666, 668 (4th Cir. 2007).

2 Regarding defenses, the Fourth Circuit has explained:

> Upon a showing of wrongful removal, return of the child is required unless the respondent establishes one of four defenses. Two of the defenses must be supported by clear and convincing evidence: (1) that return would expose the child to a "grave risk" of "physical or psychological harm or otherwise place [the child] in an intolerable situation" and (2) that return of the child would not be permitted by fundamental principles of the United States relating to the protection of human rights and fundamental freedoms. The other two defenses may be supported by a preponderance of the evidence: (1) that the petition for return was not filed within one year of the removal and the child is now well-settled in another country, and (2) that the petitioner was not actually exercising his custodial rights at the time of the removal or had consented to or acquiesced in the removal.

for Petitioner is specifically advised that in the event they are successful, they should be prepared to move the court for any award of an attorney's fee at that hearing and support such request with appropriate lode-star documentation.

Respondent is advised that the issue of permanent custody of the child is not directly before the court. Bader v. Kramer, 484 F.3d 666, 670 (4th Cir. 2007) (finding that "a determination on the merits of the parent's underlying custody claim" is "reserved for the courts of the country of habitual residence"). Pursuant to the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601 et seq., the court may take measures under federal or state law to prevent the child's further removal or concealment before the final disposition of the Hague Petition and may order that the child be removed from the person having physical control of the child if the applicable requirements of state law are satisfied. 42 U.S.C. § 11604. Under North Carolina General Statute §50A-311, the court may issue a warrant to take physical custody of the child if the court finds that the child is imminently likely to suffer serious physical harm or be removed from the state. As discussed above, the court has not made such a finding. **Respondent is advised that if she violates the TRO, not only will she be in criminal contempt of this court (which is prosecutable as a federal criminal offense by the United States Attorney), the court would then have reason to issue the warrant requiring the United States Marshal to take custody of the child, which has to this point not been granted.**

---

Bader v. Kramer, 484 F.3d at 668–69 (internal citations and quotation marks omitted).

**ORDER**

**IT IS, THEREFORE, ORDERED** that the court's own Alternative Motion for Temporary Restraining Order is **GRANTED,** as follows:

**TEMPORARY RESTRAINING ORDER**

It is hereby Order, Adjudged, and Decreed that:

Michelle Toler Smith

and those acting at her direction, are hereby prohibited from removing the minor child C.R.S (hereinafter "the child") from the Western District of North Carolina pending final resolution of petitioner's Hague Petition. Respondent is cautioned that violation of this Temporary Restraining Order can be treated as a criminal contempt and is punishable as a federal criminal offense by the United States Attorney and would likely result in the issuance of the §50A warrant requiring the taking of custody of the child by the United States Marshal.

**IT IS FURTHER ORDERED** that Petitioner's "Verified Petition for Return of Child to France and Issuance of Show Cause Order" (#1) shall be **CALENDARED** and **NOTICED** by the Clerk of Court for a hearing on Friday, August 12, in the Asheville division.

If, at the time of hearing, Respondent requests a continuance for her to retain counsel to represent her in this matter, the court will consider such request at that time. **Petitioner and Respondent are to be physically present at the hearing for the purpose of providing testimony to aid the court's decision.** If Respondent is served and fails to appear on such date or removes the minor child or causes the minor child to be removed from the jurisdiction of this court, the court shall issue a warrant for the arrest of Respondent and appearance for a hearing to show cause why she should not be held in contempt.

**IT IS FURTHER ORDERED** that Respondent bring any and all of the child's passports and travel documents to the hearing along with the child.

**IT IS FURTHER ORDERED** that Respondent and the child must remain in the State of North Carolina during the pendency of this matter.

**The United States Marshal is directed to immediately serve this Order and the Verified Petition (#1) on Respondent, who the court has reason to believe will be found at: 770 West Club Boulevard, Lake Toxaway, North Carolina 28747.**

**IT IS FURTHER ORDERED** that to the extent that Petitioner requests expedited consideration of his Petition via his "Request for Expedited Consideration of Petition for Return of Child to France and Issuance of Show Cause Order" (#2), such motion is **GRANTED in part**, to the extent that the court has considered this matter on an expedited basis, but is **DENIED in part** as to the remainder of the relief requested in the motion.

Signed: August 4, 2016

Max O. Cogburn Jr
United States District Judge